UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

COUNTY OF MONROE,

                              Plaintiff,                    DECISION AND ORDER

          v.                                               23-CV-6398DGL

SIEMENS INDUSTRY, INC.,

                              Defendant.
_____


        Plaintiff, the County of Monroe ("County"), commenced this action in New York State

Supreme Court, Monroe County, on June 6, 2023.  The complaint (Dkt. #1-1 at 6-23) asserts

several claims, mostly sounding in breach of contract, against Siemens Industry, Inc.

("Siemens").  Siemens, which is a Delaware corporation with its principal place of business in

Georgia, removed the action to this Court on July 14, 2023 pursuant to the Court's diversity

jurisdiction under 28 U.S.C. §§ 1441(b) and 1446.

        Siemens filed an answer to the complaint on July 21, 2023 (Dkt. #8), and on January 11,

2024, Siemens filed an amended answer and counterclaims (Dkt. #18).  The County now moves

to dismiss four of Siemens's five counterclaims.


                                    **BACKGROUND**

        The details of the dispute underlying this action need not be set forth at length here, but in

short, the County's complaint alleges that the County and Siemens entered into a contract

pursuant to which Siemens was to operate, maintain, and inspect certain heat and power facilities

at properties owned by the County.  The County alleges that due to Siemens's inadequate maintenance of the facilities, the County was forced to rent and run diesel generators to provide power at the properties, and to purchase a new transformer, all of which resulted in substantial costs to the County.

In its counterclaims, Siemens alleges that in 2019 it performed certain work for the County under the parties' contract, to remedy a power interruption at one of the County's properties.  Siemens alleges that it billed the County for that work in the amount of $19,635.50, which the County has not paid.  Siemens also alleges that after the parties' contract expired on December 31, 2020, Siemens continued to perform work for the County to keep its generators running through approximately August 2021.  Siemens alleges that by continuing to service the generators for about eight months after the contract expired, it incurred costs of $39,319.10, and that the County has not reimbursed Siemens for those costs or paid for those services.  Based on those allegations, Siemens alleges claims for (1) breach of contract, (2) quantum meruit, and (3) unjust enrichment as to the 2019 work, and claims for (4) quantum meruit and (5) unjust enrichment as to the 2021 work.  The County now seeks to dismiss Siemens's counterclaims (2) through (5).  It does not seek dismissal of the first counterclaim, for breach of contract.

## DISCUSSION

### I.  Notice of Claim

The County contends that Siemens's second, third, fourth, and fifth counterclaims should be dismissed for failure to properly serve a notice of claim ("NOC") on the County in accordance with N.Y. County Law § 52.  Because the counterclaims are brought under New York law, this

Court must determine whether New York's NOC requirements apply, and if so whether the requirements have been met. *See Hardy v. New York City Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999) (noting "the general rule that in a federal court, state notice-of-claim statutes apply to state-law claims") (citing *Felder v. Casey*, 487 U.S. 131, 151 (1988)).

Because the applicability of  County Law § 52 and the statutes that it references are central to the issue before the Court, they are worth quoting in full.  Section 52 provides that

> [a]ny claim or notice of claim against a county for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity, alleged to have been caused or sustained in whole or in part by or because of any misfeasance, omission of duty, negligence or wrongful act on the part of the county, its officers, agents, servants or employees, must be made and served in compliance with section fifty-e of the general municipal law.  Every action upon such claim shall be commenced pursuant to the provisions of section fifty-I of the general municipal law.

The statute, then, requires for claims within its scope that notice of claim be made in compliance with General Municipal Law § 50-e.  That statute, which applies to "any case founded upon tort where a notice of claim is required by law as a condition precedent to the commencement of an action or special proceeding against a public corporation, as defined in the general construction law," sets forth the procedure for filing a notice of claim and provides that the notice must be filed within ninety days after the claim arose.

Section 52 also requires that an action within its scope must be commenced pursuant to the provisions of General Municipal Law § 50-I, which provides in pertinent part that "[n]o action or special proceeding shall be prosecuted or maintained against" a municipality, including a county, "for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such" municipality, unless a

notice of claim was made and served upon the municipality in compliance with § 50-e.

Although County Law § 52 thus incorporates some of the provisions of §§ 50-e and 50-I, its wording is not identical to that of those statutes.  Whereas § 50-i is by its terms limited to actions "for personal injury, wrongful death or damage to real or personal property alleged to have been sustained by reason of the negligence or wrongful act" of a municipality, § 52 applies to "any claim" against a county "for damage, injury or death, or for invasion of personal or property rights, of every name and nature, and whether casual or continuing trespass or nuisance and any other claim for damages arising at law or in equity," arising from the wrongful acts of the county or its agents.

Despite § 52's relatively broad language, by its terms it does not encompass "any claim" against a county, without restriction, but any claim "for damage, injury or death, or for invasion of personal or property rights."  Notably, § 52 is also captioned, "Presentation of claims for torts; commencement of actions."  Largely because of that language, "New York courts have determined that Section 52 'does not require a filing of a notice of claim in compliance with General Municipal Law § 50-e where the claim is for breach of contract.'"  *Cooper Crouse-Hinds, LLC v. City of Syracuse*, No. 16-CV-1201, 2018 WL 840056, at *10 (N.D.N.Y. Feb. 12, 2018) (citing *Copece Contracting Corp. v. Erie County*, 115 A.D.2d 320, 320 (4th Dep't 1985)). *See also O'Connell v. Onondaga County*, No. 09-CV-364, 2012 WL 12895022, at *14 (N.D.N.Y. Feb. 9, 2012) ("even though County Law § 52 generally applies to any claim for damages against a county, breach-of-contract claims are not subject to the notice-of-claim requirements of County Law § 52") (citation omitted); *Smith v. Rise East School*, 120 A.D.2d 726 (2d Dep't 1986) ("County Law § 52, which incorporates the provisions of the General

-4-

Municipal Law §§ 50-e and 50-I does not apply to actions to recover damages for breach of contract").

In the case at bar, the County concedes that § 52's NOC requirement does not apply to Siemens's first counterclaim, for breach of contract, and the County does not seek dismissal of that claim. The parties disagree, however, whether Siemens's other counterclaims, for quantum meruit and unjust enrichment, are subject to the NOC requirement. Siemens asserts that the requirement applies only to tort claims, and not to quasi-contractual claims like quantum meruit and unjust enrichment. The County contends that the NOC requirement applies to all claims except for breach of contract claims, including claims based on quantum meruit and unjust enrichment.

As a federal court sitting in diversity, when ruling on matters of state law this Court must "give the fullest weight to pronouncements of the state's highest court ... while giving proper regard to relevant rulings of the state's lower courts." *Travelers Ins. Co. v. Carpenter*, 411 F.3d 323, 329 (2d Cir. 2005). *See also Johnson v. Fankell*, 520 U.S. 911, 916 (1997) (federal court sitting in diversity must follow the decisions of the highest court of the state in which it sits); *Donohue v. Hochul*, 32 F.4th 200, 207 (2d Cir. 2022) (if highest state court has not addressed an issue, federal court must predict how it would do so).

With respect to the issue before me–whether County Law § 52 applies to unjust-enrichment and quantum meruit claims–there does not appear to be controlling authority from the New York Court of Appeals, and the case law from New York's lower courts is relatively scant. It is well established that § 52's NOC requirement applies to tort claims and that it does not apply to breach of contract claims, but there is little case law addressing quasi-contract claims, which

fall into neither category.  *See Perkins v. New York Times Co.*, No. 22-cv-5202, 2023 WL 3601489, at *9 (S.D.N.Y. May 23, 2023) ("An unjust enrichment claim is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law") (internal quote omitted); *Friar v. Vanguard Holding Corp.*, 78 A.D.2d 83, 88 (2d Dep't 1980) ("Quasi-contract ... became the vehicle through which the courts developed a fairly detailed system of awarding restitution in cases where neither tort nor contract necessarily existed") (internal quote omitted).

There is authority that § 52's NOC requirement is broader than that of the General Municipal Law, *see Sager v. County of Sullivan*, 145 A.D.3d 1175, 1176 (3d Dep't 2016), but the precise extent of its breadth is not entirely clear.  The court in *RSRNC, LLC v. Wilson*, 220 A.D.3d 1139 (3d Dep't 2023), stated that § 52 has "been held to be applicable to some claims that are technically non-torts," but none of the cases it cited in support of that statement involved claims of the type presented in this case.  *See id.* at 1141 (collecting cases).  *See also Boyle v. Kelley*, 42 N.Y.2d 88, 91 (1977) (stating that § 52 "was sufficiently broad to cover" an estate administrator's claim for moneys wrongfully retained by the defendant county police commissioner); *Mills v. County of Monroe*, 59 N.Y.2d 307 (1983) (applying § 52's NOC requirement to claim of race discrimination under New York's Human Rights Law).

What can be gleaned from those and other New York cases is that the court's focus should be on the underlying nature of the claim presented, and whether it is more akin to a tort or contract claim.  In *Sager*, for example, the court held that § 52 applied to plaintiff's claim for damages for wrongful termination in violation of New York's Public Sector Whistleblower Law. While such a claim is grounded in statutorily-created rights, it is akin to an intentional tort claim in the sense that it is based on a wrongful act taken toward another, as opposed to some inequity

resulting from the parties' mutual course of dealing, such as the defendant's failure to pay for services rendered.

In contrast, the court in *RSRNC* held that § 52 did not apply to a nursing home's claim against a county for the value of medical services provided to a resident, which the plaintiff alleged was owed to it under Medicaid, because the claim sounded in breach of contract. In reaching that conclusion, the court said that the plaintiff's "use of language associated with negligence does not transform a claim that is contractual in nature into a tort." 220 A.D.3d at 1140. The court concluded that "the broader sweep of County Law § 52--indisputably still rooted in tort-like claims--does not extend so far as to encompass claims that are contractual in nature." *Id.* at 1141.

In the case at bar, Siemens's counterclaims for quantum meruit and unjust enrichment sound in quasi-contract, and thus are more in the nature of contract than tort claims. The Court therefore concludes that they are not subject to the NOC requirement of § 52.

As explained by the New York Court of Appeals,

[q]uasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort. The contract is a mere fiction, a form imposed in order to adapt the case to a given remedy. Briefly stated, a quasi-contractual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result.

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388-89 (1987). *See also Snyder v. Bronfman*, 13 N.Y.3d 504, 508 (2009) ("Unjust enrichment and quantum meruit are ... essentially identical claims, and both are claims under 'a contract implied ... in law to pay reasonable compensation'") (quoting N.Y. Gen. Oblig. L. § 5-701(a)); *McDermott v. City of New*

*York*, 50 N.Y.2d 211, 217 (1980) (stating with respect to unjust enrichment that "the vehicle through which the law operated was the quasi contract," under which "the rule developed that where payment by one person is compelled, which another should have made, a contract to reimburse or indemnify is implied by law") (cleaned up).

Although quasi-contract claims thus do not depend on–indeed are incompatible with–the existence of an actual contract, which requires a "meeting of the minds" between the parties as to the subject matter in question, they nonetheless involve what amounts to a contract, albeit one implied by the court "to assure a just and equitable result."  The very fact that they are referred to as "quasi-contract" rather than "quasi-tort" claims is some indication of their underlying contractual nature.  *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) (stating that unjust enrichment "is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of *such a contract*") (emphasis added); *Bradkin v. Leverton*, 26 N.Y.2d 192, 196 (N.Y. 1970) (stating that quasi-contracts "give rise to obligations more akin to those stemming from contract than from tort").

 The similarity of quasi-contract claims to traditional contract claims led the court in *Judge Rotenberg Educ. Ctr. Inc. v. Blass*, No. 10-cv-3628, 2011 WL 13323354 (E.D.N.Y. May 4, 2011), to conclude that § 52 did not apply to the plaintiff's claims against a county and the county Department of Social Services ("DSS") under theories of breach of implied contract, unjust enrichment, restitution, and quantum meruit, seeking payment for services that the plaintiff had provided to a disabled person who had been placed in the custody and care of the DSS by a Family Court judge.  Although the DSS had agreed to pay for her care up to her

-8-

twenty-first birthday, it was never spelled out who would be responsible for her care after that date, and the plaintiff sought reimbursement for about twelve months of care provided after the recipient turned twenty-one.

Denying the defendants' motion to dismiss for failure to file a NOC, the court stated that § 52 "applies only to claims that sound in tort," and that "to the extent that the plaintiff's quasi-contract claims are viewed as a hybrid of contract and tort claims, the New York Court of Appeals has held that, quasi-contracts 'give rise to obligations more akin to those stemming from contract than from tort.'" *Id.* at *3 (citing *Clark-Fitzpatrick*, 70 N.Y.2d at 388). The court therefore concluded that § 52 did not apply to the plaintiff's quasi-contract claims and that the plaintiff was not required to serve a NOC.

While the County describes the *Judge Rotenberg Educ. Ctr.* decision as an "outlier," the fact is that it is one of the only reported cases to analyze the applicability of § 52 to quasi-contract claims, and I agree with its reasoning. As explained above, Siemens's quantum meruit and unjust enrichment claims are akin to contract claims, in the sense that they arise out of the parties' performance in the course of a commercial relationship, particularly since that relationship had its genesis in a contract between the parties.

Although there appears to be no legislative history indicating why the Legislature did not include contract claims in § 52, the facts alleged here demonstrate why they may have chosen not to do so.[1] With torts, often the act giving rise to the claim will be known at the time of the act, or

---

[1] The principle that § 52 does not apply to contract claims can be traced back to two 1972 decisions, *Gahagan Dredging Corp. v. County of Nassau*, 71 Misc.2d 751 (Sup. Ct. Nassau Co. 1972), and *Meed v. Nassau County Police Dep't*, 70 Misc.2d 274 (Sup. Ct. Nassau Co. 1972), both of which focused on § 52's caption, "Presentation of claims for torts," and the statute's omission of any mention of claims for breach of contract, in contrast to other statutes that

at least soon enough thereafter to allow for the filing of a notice of claim within ninety days. With a contract-based claim, that is less likely to be the case. A party may perform work in the expectation of being paid, and only after a lengthy period of time may it become apparent that no payment is forthcoming. With quasi-contractual claims such as those presented here, it can be difficult to say when the claim arose, and it is not at all clear that New York courts would want to encourage parties doing business with a municipality to rush to file a notice of claim every time there was some delay or dispute over payment.

For the reasons stated above, the Court concludes that the NOC requirement of County Law § 52 does not apply to any of Siemens's counterclaims.[2]

---

expressly mandate a notice of claim as a condition precedent to an action on a contract. *See Meed*, 70 Misc.2d at 275 ("where the Legislature intended to make the filing of a claim a condition precedent to a contract action it has expressly so provided") (citing statutes).

[2] The cases relied upon by the County are not to the contrary. The court in *Carpenter v. Mohawk Valley Comm. Coll.*, No. 18-cv-1268, 2023 WL 5289439 (N.D.N.Y. Aug. 17, 2023), held that § 52's NOC requirement applied to the plaintiff's claim for unpaid overtime wages pursuant to the federal Fair Labor Standards Act and the New York State Labor Law. There were no quasi-contract claims of the sort at issue in the case at bar, and as explained in a prior decision in that case, the plaintiff's claims arose out of what he alleged were false allegations of misconduct that led to his termination. *See* 2022 WL 4482738 (N.D.N.Y. Sept. 27, 2022).

The County's reliance on *Slemish Corp., S.A. v. Morgenthau*, 192 A.D.3d 465 (1st Dep't 2021), is also misplaced. The court there held that § 52 applied to the plaintiff companies' claim against a district attorney whose prosecution of the companies' domestic agent for transferring funds without a license resulted in the forfeiture of funds in bank accounts maintained by their agent, which the plaintiffs alleged belonged to them. Although the court stated that "the money had and received cause of action ... sounds in quasi-contract," the claim did not involve a commercial relationship between the plaintiffs and the defendant. As stated, the court's focus should not be on the label attached to the claim, but on its underlying nature.

**II.  Whether Quantum Meruit and Unjust Enrichment Claims are Properly Pleaded**

The County also contends that Siemens's third and fifth counterclaims, for unjust enrichment, must be dismissed because they are subsumed into the second and fourth counterclaims, for quantum meruit.  The County further argues that the second counterclaim, for quantum meruit as to the work performed in 2019, should be dismissed because it relates to matters that were governed by the parties' contract.

With respect to the latter argument, the County is correct that "New York law does not permit recovery in quantum meruit ... if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."  *Mid-Hudson Catskill Ministry v. Fine Host*, 418 F.3d 168, 175 (2d Cir. 2005).  *See also Aviv Constr., Inc. v. Antiquarium, Ltd.*, 259 A.D.2d 445, 446 (1st Dep't 1999) ("The existence of a valid and enforceable written contract precludes a quantum meruit claim").

The principle is well established, however, that a party may plead inconsistent or mutually exclusive theories of recovery in the alternative.  *See*, *e.g.*, *Ellis v. Abbey & Ellis*, 294 A.D.2d 168, 170 (1st Dept 2002) ("Causes of action and grounds for relief may be pleaded in the alternative and are not barred for inconsistency").  That includes contract and quasi-contract claims.  *See*, *e.g.*, *National City Commercial Capital Co., LLC v. Global Golf, Inc.*, No. 09-CV-307, 2009 WL 1437620, at *1 (E.D.N.Y. May 20, 2009) (stating that "if this Court were to find, at a later stage of this litigation, that a 'valid and enforceable' agreement governed the subject matter at issue in plaintiff's quasi-contract claim, such a claim would be barred," but adding that "at this stage of the case, there is no basis to conclude that such claims should be dismissed as a matter of law"); *Randolph Equities, LLC v. Carbon Capital, Inc.*, No. Civ. 10889,

-11-

2007 WL 914234, at * 6 (S.D.N.Y. Mar.26, 2007) ("A plaintiff is not barred from pleading both a contract claim, and in the alternative, a quasi-contract or equitable estoppel claim").  The County's motion to dismiss the second counterclaim on this ground is therefore denied.

In its reply brief, the County raises for the first time the argument that Siemens's quasi-contract claims should be dismissed on grounds of public policy.  In support of that argument, the County states that New York has a "strong public policy against holding municipalities liable on implied contract theories ... ."  (Dkt. #26 at 5.)

Since this argument was not raised by the County in its initial motion papers, the Court need not address it.  *See Doherty v. Bice*, __ F.4th __, 2024 WL 2096705, at *5 n. 3 (2d Cir. 2024) (declining to address argument that plaintiff raised for the first time in his reply brief, "since '[i]ssues raised for the first time in a reply brief are generally deemed [forfeited]'") (quoting *Pettaway v. Nat'l Recovery Sols., LLC,* 955 F.3d 299, 305 n.2 (2d Cir. 2020)).

In any event, the cases cited by the County are distinguishable from this case.  In *PHL Variable Ins. Co. v. Town of Oyster Bay*, 929 F.3d 79 (2d Cir. 2019), the court affirmed the dismissal of breach of contract and unjust enrichment claims against a town, but the purported contract had never been approved by the town board, as required by law, and may well have been prohibited by the New York State Constitution's proscription of a town's extending credit to third parties.  *See id.* at 92 (citing N.Y. State Const. Art. VIII, § 1).  No similar circumstances are alleged here.

Likewise, in *Gill, Korff and Associate, Architects and Engineer, P.C. v. County of Onondaga*, 152 A.D.2d 912 (4th Dep't 1989), the court found no basis for a quantum meruit claim, under "the general rule ... that there can be no recovery against a municipality in *quantum*

*meruit* where the original contract is void as contrary to statute." The court noted that since the county legislature had ultimately voted not to proceed with the underlying project, "the taxpayers received no benefit from plaintiff's services and the County was not unjustly enriched thereby." Significantly, the court also stated that "[a]s an exception to the general rule, a plaintiff may recover from a municipality where he has entered into the contract in good faith, the contract does not violate public policy, and the circumstances indicate that the municipality would be unjustly enriched." *Id.* at 913 (citing *Vrooman v. Village of Middleville*, 91 A.D.2d 833 (4th Dep't 1982)).

 In the case at bar, both parties agree that a valid written contract did exist between them, although they dispute whether and by whom the contract was breached, and whether it covered the services performed by Siemens that are the subject of its counterclaims. In light of those disputes and the County's belated raising of this issue, the Court denies the motion to dismiss Siemens's quasi-contract counterclaims as contrary to New York public policy.

 The Court agrees with the County, however, that Siemens may not plead separate claims for quantum meruit and unjust enrichment, since those claims are "essentially identical." *Snyder*, 13 N.Y.3d at 508. As such, they are properly analyzed as a single quasi-contract claim. *See Mid-Hudson Catskill Ministry v. Fine Host*, 418 F.3d 168, 175 (2d Cir. 2005) ("Applying New York law, we may analyze quantum meruit and unjust enrichment together as a single quasi contract claim"); *Cambridge Capital LLC v. Ruby Has LLC*, 565 F.Supp.3d 420, 460 (S.D.N.Y. 2021) ("Unjust enrichment is a required element for an implied-in-law, or quasi contract, and quantum meruit, meaning 'as much as he deserves,' is one measure of liability for the breach of such a contract") (internal quote omitted). Accordingly, the Court will grant the motion to

dismiss the third and fifth counterclaims for unjust enrichment, deem those claims to be subsumed in Siemens's claims for quantum meruit, and treat them as quasi-contract claims relating to the work performed by Siemens in 2019 and 2021. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 663 (2d Cir.1996) ("Counts Two and Three for quantum meruit and unjust enrichment were quite properly subsumed by the district court into a single count for restitution, and were properly pleaded as such in the alternative to the contractual claim of Count One") (citations omitted).

## CONCLUSION

Plaintiff's motion to dismiss defendant's counterclaims (Dkt. #19) is granted in part and denied in part. Defendant's third counterclaim (captioned "2019 Incident - Unjust Enrichment") is dismissed, and is deemed subsumed within defendant's second counterclaim (captioned "2019 Incident - Quantum Meruit"). Defendant's fifth counterclaim (captioned "2021 Incident - Unjust Enrichment") is dismissed, and is deemed subsumed within defendant's fourth counterclaim (captioned "2021 Incident - Quantum Meruit"). In all other respects, plaintiff's motion is denied.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
      May 15, 2024.

-14-